Porter, J.

The petition in this case sets forth, that John Brandt & Henry Foster, the defendants, together with James Johnson & William Ward, of the county of Scott, and state of Kentucky, were lately transacting business in the city of New-Orleans, under the stile of John Brandt & Co., and that said partnership was indebted on or before the 20th September, 1820, to James Johnson & William Ward, two of the co-partners, in the sum of $30,697 57 cents, to E. P. Johnson & Co. $5131 45 cents, to Ward & Johnson $14,287 45 cents, and to one Lee White $512 50 cents, amount *626 ing in the whole, to fifty thousand six hundred and twenty-eight dollars, ninety-seven cents; which debts it is alleged were legally assigned to the petitioner for a valuable consideration. And that in addition to these debts, he is also entitled by virtue of an assignment from the said James Johnson and William Ward, to any estate owned or possessed by them in Louisiana; to any owned by the late firm of John Brandt & Co., and to all accounts or claims of James Johnson and William Ward, against said partnership.
East’n District.
April, 1821.
But the oath of the creditor alone, is not sufficient to obtain an order, to sequestrate the property of the insolvent, and call a meeting of his creditors.
After this statement of the debts due by said firm, and the manner in which the plaintiff obtained an interest in them, various acts of fraud and misconduct, on the part of the defendants in this suit, are alleged. It is stated that they have unfaithfully and unskilfully managed the affairs of the partnership, in purchasing real property in their own names out of partnership funds; in purchasing real estate in the name of the firm with said funds, without the knowlege, and contrary to the consent of the co-partners; in stopping payment, by reason of their injudicious and fraudulent conduct, and obtaining a respite from their creditors; in refusing to permit their co- *627 partners to examine the partnership books; and finally, by wasting the estate and of the partnership, and failing to meet the first instalment of the debts, for the payment which their creditors had accorded them a term of years.
By reason of which it is averred that the defendants are insolvent, and that unless prevented by the interposition of the court, the estate of the late firm of John Brandt & Co. (which has been for sometime dissolved) will likewise prove insolvent.
The petition concludes with a prayer, that J. Brandt, Henry Foster, James Johnson, William Ward, and R. M. Johnson, be cited to answer the petition; that an account be taken of the affairs of said partnership; that a writ of sequestration may issue against the books, papers and effects of the said Brandt & Foster, jointly and separately; that a meeting of the creditors be called to advise upon a mode of settling their affairs, and disposing of the property of said firm of Brandt & Foster; and that such other and further relief may be granted as the equity of the case requires.
On this petition the judge granted an order, that the creditors should meet and receive *628 a cession of the defendants estate; and that the goods, chattels, effects and other estate of the defendants be sequestered and held subject to the further order of the court. From this order the defendants appealed.
The only evidence, which comes up with the record, is an affidavit of the agent of the petitioner, who swears to the truth of the greater number of the allegations in the petition.—But as the record of the proceedings in the district court, in the case of Brandt & Co. vs. their creditors, praying for a respite, is referred to in the petition, and has been argued on by counsel, I have, in forming an opinion in this cause, considered the fact of such respite having been accorded, in proof before us.
Several questions, of considerable importance to the community, have been discussed, and are presented for decision. Before we can arrive at them, an objection not connected with the merits must be disposed of.
By an admission of the parties, signed and made part of the record by consent, it appears that since this appeal was taken, other creditors of Brandt & Co. have petitioned and obtained an order of the district court, calling *629 a meeting of their creditors, and staying all proceedings against their persons and property. Under this order syndics have been appointed, and it is flow contended that this order of the district court staying all proceedings being unappealed from, is in full force, and that this court can take no further cognizance of the cause until that order is rescinded.
This objection may be considered in a twofold aspect. First, as to the order of the court below having the effect of staying proceedings here; and second, whether the appointment of syndics has not produced a change of parties, and rendered Brandt & Foster incapable to act any further in this cause.
I. As the constitution has created this court, and given it supreme appellate powers, I do not think that its exercise of them can be suspended, or in any way affected by the orders which an inferior court may issue. Such a doctrine would render this tribunal subordinate, instead of being supreme; for in the case now before us, if the defendants had appealed from the decision, which it is contended, stays proceedings here, another creditor might *630 have made a similar application to the district court, which in its turn would have produced the same effect; and in this way our power to grant relief have been suspended, until at last was not of any advantage to the party to obtain it.
II. The authority of syndics to appear and he made parties to a cause where the insolvent is plaintiff or defendant, before the proceedings, in virtue of which they may be appointed, are homologated, is by no means clear. Febrero cinco juicios, lib. 3, cap. 3, sec. 1. Bolero de decoetione, tit. 4, quest. 2, n. 15, 16. But admitting that they have this right when the surrender is voluntary, it does follow they should possess it when forced; for the proceedings had against the debtor who opposes it, do not conclude him until finally homologated. It is true, the defendants might have appealed from the order, but they were not obliged to do so, as they may appeal from the confirmation by the court of the ulterior proceedings had before the notary. It would be incorrect I think to hold, that a case which we are bound to presume the defendants are obstinately disputing below, should during the pendency of it, be *631 used as a means to prevent them resisting a similar attempt here; and nothing but the most positive law could justify the court permitting persons to be made parties, who have an interest to lose the suit, they wish to be allowed to carry on. I am of opinion therefore that this objection cannot be sustained, and that it is the duty of the court to examine the case on its merits.
The first question arises on the form of the action:—that it is an action to make the defendants account, and yet takes the means of accounting from them; that it does not authorise the prayer for a sequestration, because it cannot be known until the account is rendered, if any thing be due.
I do not think there is any weight in these objections. There is no incompatibility between the prayer that the defendants shall account, and that a sequestration be accorded. A demand of this kind does not proceed on the presumption that nothing is due,but that something is, though the exact amount cannot be ascertained. The application for the books is also consistent with the object sought for, as the request in the petition is not that the defendants shall render an account, but that the court shall order one to be taken.
*632 Be this however as it may, it cannot affect the proceedings in this cause, for independent of the sum claimed by the petitioner, as representing the rights of partners in the firm of J. Brandt & Co., he also alleges debts due to those partners in their private right, and to other persons of whom he is the assignee.
The defendants next contend that the order given by the judge is not legal, and that the “forced surrender,” known to our law, is that which the defendant himself is compelled to resort to, when imprisoned on execution, at the suit of his creditors.
In support of this, they rely on the law of the Partidas, 5, 15, 4, which declares that if a man will neither pay his debts, nor abandon his estate, the judge is directed to put him in prison until he does one or the other; and a statute of our legislature, 2 Martin's Digest, 448, which enacts that if a debtor refuses to deliver up his property, and transfer it for the benefit of his creditors, he shall suffer imprisonment at hard labour, not less than two or more than ten years.
These, it is contended, are the means, and the only means given by law, to force a surren *633 der from the debtor, and that if he is obstinate and refuses to comply, there is no power in the court to order one.
If the enquiry was material, it would perhaps be found that these laws were intended to give relief in cases where the debtor conceals his property. This is very obviously the object of our statute, which compels a debtor in actual confinement, to make out a schedule of his property on oath, and transfer it to his creditors. For, as by law, the debtor cannot be imprisoned until a fieri facias is returned, no property found; the very proceedings given to make him disclose and abandon his estate, implies that he has effects which the creditor could not reach by the ordinary means.
But this question I think turns on, and must be governed by the positive expressions in our Code, art. 168. “ The voluntary surrender of property is that which is made at the desire of the debtor himself.”
“ And the forced surrender is that which is ordered at the instance of the debtor’s creditors, or of some of them, in cases provided for by law.” Idem.
According to the defendants, the “ forced *634 surrender,” here spoken of, is that which by imprisonment the debtor is forced to make.
That mode of proceeding would not, it appears to me, satisfy these expressions, “ordered at the instance of the creditors.” It would not be ordering the surrender, but imprisoning the party until he consented to surrender.
If the course, contended for by defendants, is the correct one, in what then would it differ from ordinary cases? Every application, according to this doctrine, would possess the features, and take the appellation of a forced surrender. There is not a petition presented to have the benefit of the laws for the relief of insolvent debtor's, in which the party does not state that he is compelled by some cause or other, to apply for their protection. The reasons vary with the situation of the petitioner; sometimes because he cannot pay his debts; sometimes because a creditor threatens to pursue him in law, and he fears a fair distribution of his estate will not be made; or because he is threatened to be imprisoned; or because he actually is so. In all these cases it is compulsion which makes the debtor call his creditors together. But still it has not been doubted, that in cases such as are just are just *635 stated, there is a “voluntary surrender.” They have been uniformly held so, and I do not think that we can by distinguishing the different degress of necessity which induce the demand, say that in the one case it is forced, and the other it is not. Whenever the application for relief comes from the debtor, the surrender is voluntary. I know of no other criterion to distinguish it from that which is forced.
Again, if we were to construe the law as contended for, so that a forced surrender was dependent on the will of the debtor, the words “ordered at the instance of the creditor,” would have no meaning. The court could not order it; and if the debtor chose to be obstinate, the surrender never could be compelled. A construction, which ends by rendering important expressions of the law useless and of no effect, cannot be adopted; it violates the best rule for the interpretation of statutes.
It has been strenuously contended that the reference in the Code to the “cases provided for by law,” means the case put in the law of the Partidas, and statute already cited, when the debtor will not pay his debts, and is imprisoned in consequence.
*636 It is quite probable, that the non-payment of debts may be one of the cases in which a forced surrender can be ordered. But it is not, in my opinion, the only one; it may also, I think, be decreed, whenever the defendant is in failing circumstances. Imprisonment, I do not consider as indispensable, for that is not so much a proof of insolvency as a consequence of these acts, from which a court is authorised to declare it.
The failing circumstances, already alluded to, are those cases where the debtor, who is a trader or merchant, conceals his person or his property from his creditors, with an intention to defraud them ; or who absconds, taking with him his effects and books of accounts; or is unable to pay all his debts; or who applies for a respite; or to have the benefit of these laws made for the relief of insolvent debtors; or against whom execution has issued; or who fails to discharge his debts as they become due. Novissima Recopilacian, lib. 11, tit. 32, l. 2, 3, 5, 6, 7.
In all these cases, that proceeding which our law contemplated, by the expressions, “forced surrender” maybe ordered; the creditors may apply, that a concurso be formed; formed; *637 that syndics be appointed; that the property be sequestered and applied to the common benefit; and that the debtor, if he conceals his effects, be imprisoned until he makes a full and fair disclosure respecting enem. Curia Philipica, lib. 2, cap. 11, n. 21, 31. Bolero Tract. de decoctione titulus 2, quest. 5, n. 18, 19.
Great inconvenience would result, and frauds of every description might be committed with impunity, if creditors had not such a power.
The defendants, however, still insist, that if such an order can be made, yet it issued improvidently in this case.
According to the practice in Spain, the debtor who had failed, or who was suspected of failing, could be arrested, and his property sequestered. To obtain these orders, ex parte proof, by witnesses, was held sufficient. Curia Philippica, lib. 2, cap. 11. n. 23. The same evidence must be given us, unless it can be shewn, that our statutes have changed the practice, or that great inconvenience would result from maintaining it.
I know of no change which our laws has made on this subject, and the inconviences, I think, are on the other side.
*638 To give every creditor, whether he be a resident or non-resident of the state, the privilege of declaring debtor insolvent, and seizing his property of every description, without fundhing security for the consequent damage that may ensue, is evidently a power that might be exercised to the most iniquitous purposes. It is but right, therefore, to require, that the facts on which so severe a remedy is demanded, should be fully proved. What shall be the nature and extent of that proof, it is impossible to define; it must depend on the circumstances of the case, and those who have to act on it should weigh it cautiously. It may, however, I think be safely said, that the oath alone, of the party applying, is not sufficient.
In this case the facts have been proved by an agent standing in the place of his principal, acting for him, and representing him. His evidence, I consider, the same of that of the plaintiff himself, and is not that kind of proof which the law requires.
The fact of a respite having been granted, and the oath of the petitioner, swearing to a non-compliance with it, would, in my opinion, have been sufficient, if it appeared, that the *639 plaintiff was actually a creditor; but nothing has been shewn (except from the affidavit of the agent) to prove that he was so. And I understood, no fact admitted, except that Brandt & Foster did obtain a respite from those to whom they were indebted.
I am therefore of opinion, that the order for a meeting of creditors and sequestration, granted in this case, issued improvidently, and should be set aside, and that the plaintiff and appellee pay the cost of this appeal.